UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TJT CAPITAL GROUP, LLC., | Case No.:  25-cv-242 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| TIMOTHY MCFADDEN, | |
| Defendant. | February 15, 2025 |

Plaintiff, TJT Capital Group, LLC ("Plaintiff", "TJT Capital" or "Company") by its attorneys, Lazare Potter Giacovas & Moyle LLP, brings this action against Defendant Timothy McFadden ("Defendant" or "McFadden") and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, TJT Capital, a registered investment advisor ("RIA") based in Stamford, Connecticut, brings this action against Timothy McFadden, a former member, investment advisor, and Chief Compliance Officer of the Company for over a decade, arising from his brazen and calculated theft of the Company's confidential and proprietary client information, all of which is property of the Company.  McFadden is now actively using TJT Capital's confidential client information to improperly divert TJT Capital's existing client accounts for his own benefit, and the benefit of another RIA – Value Investment Professionals, LLC ("VIP, LLC") – with whom he surreptitiously registered without even informing TJT Capital.

2. McFadden's actions – which he has been planning for months – have already caused substantial and irreparable harm to TJT Capital's business and goodwill, as McFadden has already diverted 8 client accounts totaling $9.3 million in assets in just a matter of days.

3. TJT Capital seeks a preliminary and permanent injunction to prevent McFadden's continued use and possession of the Company's confidential client information, and an award of damages to compensate it for the loss of its confidential client information, including its lost profits.

## THE PARTIES

4. Plaintiff, TJT Capital Group, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 9 West Broad Street, Suite 420, Stamford, CT 06902. It currently has two members: Timothy McMullan, who is a resident of Connecticut, and James Cook, who is also a resident of Connecticut.

5. Defendant, Timothy McFadden, is an individual and a former member, investment advisor, and Chief Compliance Officer for Plaintiff, who had been with the Company since its inception in 2009 until his sudden and secret departure. McFadden is a resident of New York, whose address is 4250 Van Cortlandt Park East, Apartment 2G, Bronx, NY, 10470.

6. As a result of his actions, alleged herein, including his surreptitious and unauthorized registration with another RIA, McFadden was terminated for cause from all roles with the Company and has also effectively resigned, abandoned, and/or withdrawn from his membership in TJT Capital.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because there is a complete diversity of citizenship as Plaintiff and its current members are all citizens of Connecticut and Defendant is a citizen of New York, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this matter presents a federal question under both the Computer Fraud and Abuse Act

("CFAA"), 18 U.S.C. § 1030 et seq, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. The Court has personal jurisdiction over Defendant, and venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

11. TJT Capital is a registered investment advisor founded in 2009. The Company provides investment advisory services to private clients and currently has $360 million assets under management.

12. From its inception, TJT Capital has been owned and operated by members Timothy McMullan ("McMullan") and James Cook ("Cook"), who together have decades of experience in the investment management industry. Among other roles, both McMullan and Cook operate TJT Capital's business and directly manage and supervise client accounts for the Company.

13. Prior to the events alleged herein, McFadden was also a member in TJT Capital who managed and supervised client accounts. In addition, McFadden had been the Company's Chief Compliance Officer since 2012.

14. Over the last year, McFadden had increasingly failed to discharge his duties to the Company. He was increasingly absent from the Company's Stamford office during regular business hours, especially on Fridays and Mondays, even though the Company requires business to be conducted in person.

15. As it turns out, McFadden's mounting inattention to his TJT Capital responsibilities was the result of his pre-occupation with devising a plan to secretly depart the Company, take its confidential client information, and unfairly compete with the Company, by registering with another RIA, Value Investment Professionals, LLC.

16. McFadden never even advised McMullan or Cook – and certainly never obtained their permission or authorization – to register with another RIA.

17. As soon as the Company discovered McFadden's registration with this other RIA, it informed him that he was terminated from all roles with TJT Capital for cause and advised him that he was no longer permitted to hold himself out as having any association with TJT Capital. The Company also requested that he return all Company property, including but not limited to his Company computer and office building key fob and office suite door key.

18. In addition, the Company reminded McFadden of something he already knew: all client relationships, client contact information, and client account information is the property of the Company, and also constitutes confidential proprietary business information subject to trade secret protection.

19. Section 2.10 of TJT Capital's Limited Liability Company Agreement ("LLC Agreement"), to which McFadden is bound, specifically states, at Section 2.10:

> <u>Title to LLC Property</u>. All property owned by the LLC, whether real or personal, tangible or intangible, shall be deemed to be owned by the LLC as an entity, and no Member, individually, shall have any ownership of such property. The LLC may hold any of its assets in its own name or in the name of its nominee, which nominee may be one or more trusts. Any property held by a nominee trust for the benefit of the LLC shall, for purposes of this Agreement, be treated as if such property were directly owned by the LLC.

20. The Company's Privacy Policy, which was part of its SEC-mandated Policies and Procedures, which also bound McFadden, stated that TJT Capital "keep[s] confidential nonpublic

4

personal information about each TJT client" and that "[t]he purpose of TJT's Privacy Notice, Privacy Policy as well as its underlying procedures it to protect the confidentiality and security of its clients' nonpublic personal information."

21. It states further that "TJT has instituted certain technical, administrative and physical safeguards through which TJT seeks to protect this nonpublic personal information about current and former clients from unauthorized use and access." These safeguards encompassed both electronic records – which were password protected in the Company's computer system – and hard copy records – which were kept in the office safe from public access.

22. TJT Capital's Policies and Procedures stated:

> The Firm has designated the Chief Compliance Officer (or his/her designee, etc.) with the responsibility for administering, maintaining, and enforcing the Firm's Privacy procedures. The Chief Compliance Officer shall be responsible for reviewing the Policy, identifying and assessing threats to information security, developing solutions to counter the identified risks, and ensuring compliance with the Policy by Firm personal.

23. In other words, McFadden – as Chief Compliance Officer – was directly responsible for managing the Company's Privacy Policy and related procedures.

24. This included administering, and signing on behalf of the Company, TJT Capital's "Non-Disclosure Agreement of Confidential and Proprietary Information for Exiting Employees", which recited that TJT Capital personnel "had access to confidential and proprietary information of TJT that is not generally known to the public or to the financial services industry" and prohibited disclosure of "any confidential information entrusted to them by TJT, a client of TJT or any other third party that TJT does business with . . . [which] includes, but is not limited to, information related to proposed, ongoing, or completed transactions of TJT, client information, client lists (past, present, or prospective), trade secrets, marketing plans, confidential information of TJT and business plans."

25. As Chief Compliance Officer, McFadden repeatedly – and as recently as January 2025 – attested to the SEC to the existence and efficacy of the Company's privacy policies and procedures.

26. Nonetheless, the Company has now discovered that in November 2024, while he was planning his exit from the Company, McFadden sent a copy of TJT Capital's client list to his personal email.

27. In so doing, McFadden exceeded and misused his authority to access the Company's non-public, password protected, confidential client information that was stored on its computer system to retain this information for his own personal uses.

28. The Company has requested that McFadden return any and all confidential client information that he took, but it received no response from McFadden and, based on recent events, believes he is still in possession of the Company's confidential client information and likely disclosed it to VIP, LLC, the RIA with which he is registered.

29. The Company has also discovered that prior to his departure, McFadden entered the office outside of business hours and secretly reviewed hard copies of the Company's client files, copies of which, upon information and belief, McFadden also still possesses.

30. McFadden has been contacting clients of TJT Capital for the purpose of taking them from TJT Capital, and indeed, several have already ended their relationship with TJT Capital and taken their business elsewhere.

31. McFadden even secretly emailed clients from his TJT Capital email address to tell them they would be receiving a hard copy letter in the mail, which, upon information and belief, was to alert them that he was leaving TJT Capital and wanted to take their business with him.

32. In fact, coinciding with his secret registration with VIP, LLC on February 5, McFadden did send correspondence to at least one TJT Capital client, which read as follows:

> Dear [Client],
>
> I am delighted to announce that I have decided to join Value Investment Professional, LLC, a NYC-based investment advisory firm. First and foremost, they share my investment philosophies as fee-only fiduciaries. Additionally, I will have more robust operations and investment research support at the new firm.
>
> With VIP, the things that are important to you will remain the same. I will be your primary point of contact, your billing rate will not change, our custodian is still Schwab, your account numbers will remain the same, and the statement will be nearly identical.
>
> I will continue to manage your accounts as part of VIP. This will require your authorization. Please fill out the attached DocuSign envelope to give the necessary permissions. Additionally, please disregard any communications from TJT Capital.
>
> Thank you for your continued trust and confidence. If you have any trouble with the DocuSign, please do not hesitate to call 646-383-7757 for assistance.
>
> Best Regards,
> Tim McFadden, CFP

33. McFadden lied to TJT Capital's clients by failing to inform them that they were free to remain with TJT Capital. His correspondence purposefully – and falsely – left the impression with Plaintiff's clients that their accounts would automatically follow him to his new RIA and that the requested paperwork was a mere formality rather than what it actually amounted to: the breaking of an existing contract with TJT Capital and entry into a new one with VIP, LLC.

34. McFadden also purposefully cast TJT Capital in a negative light in an attempt to undermine the trust that TJT Capital's clients had placed in the Company for years – indeed, he specifically told Plaintiff's clients to "disregard any communications from TJT Capital."

35. McFadden has utilized the Company's confidential client information to benefit himself, and upon information and belief, to benefit VIP, LLC.

36. Upon information and belief, McFadden has shared TJT Capital's confidential client information with VIP, LLC and at least one of its registered investment advisors, Joan Guccione ("Guccione"), who is a former (and now current) colleague of McFadden's.

37. Upon information and belief, McFadden is being actively aided and abetted by VIP, LLC and Guccione in his attempts to steal TJT Capital's clients and unfairly compete with Plaintiff.

38. McFadden's actions are particularly egregious not only given his prior role as the Company's Chief Compliance Officer, but also because he has previously been sued – and enjoined – in this very Court, for similar unauthorized taking and use of confidential client information from a prior employer. *See Genworth Financial Wealth Management, Inc. v. Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera and TJT Capital Group, LLC*, Civ. No. 09-cv-01521-DCP (D. Conn.).

39. So brazen was McFadden's conduct that he even permitted VIP, LLC to identify his TJT Capital phone number (since disconnected) as a VIP, LLC phone number in its February 5, 2025 Form ADV filed with the SEC.

40. Plaintiff, through counsel, notified VIP, LLC about McFadden's obligations with regard to its confidential client information and sought assurances that it is not in possession of, or using, same, as well as requested that it remove the TJT Capital phone number from its Form ADV. No response has been received as of this filing.

41. Upon information and belief, in contacting clients of TJT Capital and attempting to take them for his own benefit, McFadden has misrepresented the nature of his association with TJT Capital and/or the status of his RIA registration.

42. As a result of Defendant's actions including the improper use of its confidential client information, TJT Capital has already lost 8 clients and with them, $9.3 million worth of

8

assets under management. Plaintiff has also suffered and is threatened with the continued erosion and loss of further client relationships, confidential information, trade secrets, and Company goodwill, which cannot presently be quantified. Defendant has already used TJT Capital's confidential information and trade secrets to solicit and obtain business from TJT Capital clients and, upon information and belief, continues to make efforts to do so.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

43. Plaintiff repeats and realleges paragraphs 1 to 42 as if fully set forth herein.

44. Defendant agreed to be bound by the LLC Agreement, which is a valid and enforceable contract under which Plaintiff has honored its obligations.

45. Defendant also agreed to be bound by the Company's Privacy Policy and its Policies and Procedures, which also constitute valid and enforceable contracts under which Plaintiff has honored its obligations.

46. Defendant breached its obligations under those agreements as alleged above and unless enjoined, will continue to breach his obligations thereunder.

47. Defendant's conduct has caused and stands to cause TJT Capital substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as the use and disclosure of its confidential and proprietary client information.

48. As a result of Defendant's breaches, TJT Capital has suffered damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF THE
## COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 et seq.)

49. Plaintiff repeats and realleges paragraphs 1 to 48 as if fully set forth herein.

50. TJT Capital uses its computers in interstate commerce.

9

51. TJT Capital's computers are protected computers within the meaning of the Computer Fraud and Abuse Act.

52. Defendant intentionally accessed TJT Capital's non-public client information residing on TJT Capital's computers by using his TJT Capital password to access such information and transfer that information to himself, outside of TJT Capital's possession, by sending it to his personal email address, thereby obtaining TJT Capital's valuable, non-public, confidential and proprietary client information.

53. In so doing, Defendant exceeded and misused his authority to access TJT Capital's computers.

54. Defendant's actions have caused, and will continue to cause, losses to TJT Capital exceeding $5,000.

55. Defendant's actions have caused and stand to cause TJT Capital substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as its confidential, proprietary and trade secret information. Defendant will continue to cause further injury to TJT Capital unless enjoined.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE**
**DEFEND TRADE SECRETS ACT (18 U.S.C. §1836 et seq.)**

56. Plaintiff repeats and realleges paragraph 1 to 55 as if fully set forth herein.

57. TJT Capital owns its confidential client information, which consists of client lists, client contact information, and client account information, and constitutes confidential and proprietary business information. It is used by TJT Capital in interstate commerce.

58. The confidential client information constitutes trade secrets under Connecticut and federal law as it contains proprietary and confidential information essential to TJT Capital's business and from which TJT Capital obtains value by it not being known to the general public.

59. TJT Capital has taken appropriate measures, reasonable under the circumstances, to maintain the secrecy of the confidential information, by restricting access to the confidential client information.

60. As alleged herein, Defendant acquired TJT Capital's confidential client information by improper means, has used or disclosed it for his own benefit and without TJT Capital's consent, and continues to use it in interstate commerce.

61. TJT will continue to be injured by Defendant's actions unless he is enjoined from further misappropriation.

62. TJT Capital has been damaged as a result of Defendant's actions, in amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF THE
### CONNECTICUT UNIFORM TRADE SECRETS ACT (CT GEN. STAT. §35-55)

63. Plaintiff repeats and realleges paragraph 1 to 62 as if fully set forth herein.

64. TJT Capital owns its confidential client information, which consists of client lists, client contact information, and client account information, and constitutes confidential and proprietary business information.

65. The confidential client information constitute trade secrets under Connecticut law as it contains proprietary and confidential information essential to TJT Capital's business and from which TJT Capital obtains value by it not being known to the general public.

66. TJT Capital has taken appropriate measures, reasonable under the circumstances, to maintain the secrecy of the confidential information, by restricting access to the confidential client information.

67. As alleged herein, Defendant acquired TJT Capital's confidential client information by improper means, has used or disclosed it for his own benefit and without TJT Capital's consent, and continues to use it for his own benefit.

68. TJT will continue to be injured by Defendant's actions unless he is enjoined from further misappropriation.

69. TJT Capital has been damaged as a result of Defendant's actions, in amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### COMMON LAW MISAPPROPRIATION OF TRADE SECRETS

70. Plaintiff repeats and realleges paragraph 1 to 69 as if fully set forth herein.

71. TJT Capital owns its confidential client information, which consists of client lists, client contact information, and client account information, and constitutes confidential and proprietary business information.

72. The confidential client information constitute trade secrets under Connecticut law as it contains proprietary and confidential information essential to TJT Capital's business and from which TJT Capital obtains value by it not being known to the general public.

73. TJT Capital has taken appropriate measures, reasonable under the circumstances, to maintain the secrecy of the confidential information, by restricting access to the confidential client information.

74. As alleged herein, Defendant acquired TJT Capital's confidential client information by improper means, has used or disclosed it for his own benefit and without TJT Capital's consent, and continues to use it for his own benefit.

75. TJT Capital will continue to be injured by Defendant's actions unless he is enjoined from further misappropriation.

76. As a result of Defendant's actions, TJT Capital has been damaged in amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

77. Plaintiff repeats and realleges paragraphs 1 to 76 as if fully set forth herein.

78. While he was a member of TJT Capital, Defendant owed fiduciary duties to TJT Capital pursuant to Delaware law.

79. TJT Capital's LLC Agreement does not disclaim fiduciary duties.

80. Defendant's actions as alleged herein constitute a breach of his fiduciary duty to TJT Capital.

81. TJT Capital has been damaged as a result of Defendant's actions, in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR
## ADVANTAGEOUS BUSINESS RELATIONS

82. Plaintiff repeats and realleges paragraphs 1 to 81 as if fully set forth herein.

83. TJT Capital has had substantial and ongoing contractual relationships with its clients, whom Defendant has already diverted, or is actively attempting to divert.

84. TJT Capital also has a reasonable business expectancy in maintaining those client relationships in the future, as well as with potential clients that Defendant has already diverted, or is actively attempting to divert.

85. TJT Capital has a reasonable expectation of entering into continued contractual relationships with its clients and potential clients.

86. Defendant is aware of the contracts between TJT Capital and its clients.

87. By engaging in the conduct described above, Defendant has used improper means to intentionally and wrongfully interfere with TJT Capital's contractual and/or business expectancy relationships with those clients and potential clients, and caused TJT Capital clients to end their contracts with Plaintiff.

88. As a result of Defendant's actions, TJT Capital has been damaged in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## VIOLATION OF CONNECTICUT'S
## UNFAIR TRADE PRACTICES ACT ("CUTPA")

89. Plaintiff repeats and realleges paragraphs 1 to 88 as if fully set forth herein.

90. Defendant's actions alleged above – which include providing false information to TJT Capital clients about the status of their accounts with TJT Capital – are unethical, unscrupulous, unfair, and deceptive, and constitute an unfair method of competition and unfair or deceptive acts or practices in the conduct of trade and commerce, in violation of the CUTPA (Conn. Gen. Stat. §§ 42-110, et seq.).

91. Defendant's conduct was intentional and willful.

92. Defendant's violation of the CUTPA was carried out for the purpose of competing unfairly with Plaintiff.

93. Defendant's violations of the CUTPA include intentionally deceiving consumers (*i.e.* TJT Capital's clients).

94. As a result of Defendant's violation of the CUTPA, Plaintiff has suffered damages in an amount to be determined at trial.

### AS AND FOR A NINTH CAUSE OF ACTION
### USURPATION OF CORPORATE OPPORTUNITY

95. Plaintiff repeats and realleges paragraphs 1 to 94 as if fully set forth herein.

96. Defendant was a fiduciary of Plaintiff while a member and Chief Compliance Officer of TJT Capital.

97. Maintaining and expanding its client relationships was a corporate opportunity that was within Plaintiff's line of business, that Plaintiff had a reasonable interest or expectancy in maintaining or expanding, and that Plaintiff was financially able to pursue.

98. As alleged above, Defendant's actions while a fiduciary of TJT Capital – including the taking of TJT Capital's confidential client information for himself, and sending emails to TJT Capital clients from his TJT Capital email address for the purpose of moving them over to VIP, LLC – constituted a breach of his fiduciary to TJT Capital because it placed Defendant's personal interests adverse to Plaintiff.

99. Defendant's conduct has resulted in a taking of Plaintiff's corporate opportunities and resulted in damages to Plaintiff in an amount to be determined at trial.

### JURY TRIAL

Plaintiff demands a trial by jury of all issues and claims in this action that are so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) A preliminary and permanent injunction preventing Defendant from possessing, using, or disclosing TJT Capital's confidential client information;

(b) An accounting of the monies obtained through Defendant's wrongful acts (i.e. the proceeds obtained from TJT Capital's clients that Defendant has diverted to himself);

(c) Disgorgement of the monies obtained through Defendant's wrongful acts;

(d) Lost profits

(e) Compensatory damages

(f) Attorneys' fees and costs, and

(g) Such other and further relief and the court deems just and proper.  invoice, plus reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

Dated:  February 15, 2025
	Fairfield, Connecticut

LAZARE POTTER GIACOVAS
    & MOYLE LLP

By:   s/ Michael Conway
         Michael Conway
Robert A. Giacovas (*PHV forthcoming*)
Jacob A. Englander  (*PHV forthcoming*)
747 Third Avenue, 16th Floor
New York, NY 10017
(212) 758-9300
(212) 888-3295 (fax)
mconway@lpgmlaw.com
rgiacovas@lpgmlaw.com
jenglander@lpgmlaw.com

*Attorneys for Plaintiff*
*TJT Capital Group, LLC*

16