UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TJT CAPITAL GROUP, LLC,** | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:25-cv-00242 (SFR) |
| | : | |
| V. | : | |
| | : | |
| **TIMOTHY MCFADDEN,** | : | |
| | : | APRIL 21, 2025 |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7, Defendant Timothy McFadden ("McFadden") submits this Memorandum in support of his Motion to Dismiss the Second and Fifth Causes of Action alleged in the Amended Complaint filed by Plaintiff TJT Capital Group, LLC ("TJT") (ECF No. 54) for failure to state claims on which relief may be granted.

## PRELIMINARY STATEMENT

TJT commenced this action via the filing of a Complaint dated February 15, 2025. TJT did so in connection with an application for a temporary restraining order and a preliminary injunction. A hearing was held on March 3, 2025, and on March 7, 2025, this Court issued a decision denying TJT's request for a temporary restraining order. TJT then abandoned its effort to seek a preliminary injunction. On April 7, 2025, TJT filed an Amended Complaint adding McFadden's current employer, Value Investment Professionals, Inc. ("VIP") and its founder and managing member, Andrew Hodges ("Hodges"), as defendants to the Third, Fourth, Fifth, Seventh, and Ninth Causes of Action, as well as adding a Tenth and Eleventh Causes of Action solely against VIP and Hodges.

The gravamen of TJT's allegations arise out of McFadden's communications and efforts with newly-added Defendants VIP and Hodges to find a new affiliation after McFadden gave

notice he wanted to leave TJT due to his underpayment and mistreatment. TJT claims McFadden improperly went beyond "preparing to compete" and breached his fiduciary duty. The primary support for this contention is that, despite the lack of any restrictive covenants, McFadden allegedly "misappropriated" a client list which TJT contends constituted a "trade secret." TJT claims these efforts to move to VIP justified McFadden's immediate ouster from TJT by the two other remaining members, James Cook ("Cook") and Timothy McMullan ("McMullan") without compensation for McFadden's one-third interest. TJT asserts that McFadden's use of this list of clients and specifically his activity in lining up those clients with VIP to "jump start" his business once he left TJT gives rise to claims for violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (Second Cause of Action) and common law misappropriation of trade secrets (Fifth Cause of Action). McFadden now moves to dismiss those claims for failure to state claims on which relief may be granted.

## RELEVANT FACTUAL ALLEGATIONS

TJT is a limited liability company organized under the laws of Delaware, with its offices in Stamford, Connecticut. (Amended Complaint (ECF No. 54) at ¶ 4.) Cook and McMullan are residents of Connecticut and are TJT's current members. (Id.) McFadden is a resident of New York. (Id. ¶ 5.) TJT is a registered investment advisor. McFadden, Cook and McMullan each directly managed, serviced and supervised client accounts for TJT. (Id. at ¶¶ 13-14.) Subject matter jurisdiction is premised upon diversity of citizenship, as well as federal question jurisdiction under the Computer Fraud and Abuse Act and the Defend Trade Secrets Act. (Id. at ¶¶ 9-10.)

TJT admits that in October of 2024, McFadden, in an "emotionally charged tirade," complained he "was unhappy with his remuneration" and informed McMullan and Cook he

2

wanted to leave TJT. (Id. at ¶¶ 18, 19.) TJT's Amended Complaint focuses upon allegations of alleged wrongdoing by McFadden before his departure. TJT claims that McFadden devised "a plan to feather his own nest, prevent a sale of [TJT], and devalue TJT Capital on his way out the door," and, in so doing, "began a ... courtship" and registered with a competing advisor without knowledge or permission of Cook or McMullan and wrongfully "sent a copy of [TJT's] client list to his personal email" from TJT's computer system "for his own personal -- and VIP and Hodges' -- use and benefit, to the detriment of Plaintiff." (Id. at ¶¶ 18, 21, 23, 38, 40.)

TJT alleges further that McFadden remains in possession of this "confidential client information" (id. at ¶ 41) and used this list to contact TJT clients "secretly" while still affiliated with TJT in a successful attempt to entice them to eventually move their business to VIP (id. at ¶¶ 45-62). Plaintiff alleges that, as a result, "within just a matter of days *after* [it filed this federal action]," McFadden "was able to deliver 62 TJT Capital client accounts to VIP," a "prize that Hodges had been worked toward with McFadden for months...." (Id. at ¶ 62 (emphasis supplied).) Despite the lack of any non-compete agreement,[1] TJT contends that this "taking" by McFadden was illegal as "these TJT Capital client accounts were already lined up and ready to go based upon McFadden's, Hodges [sic], and VIP's coordinated efforts to compete with Plaintiff for those accounts, which began months before McFadden exited his role as a fiduciary of TJT Capital." (Id. at ¶ 63.) TJT alleges that as a result, it has lost at least five years of future

---

[1] TJT does not claim that McFadden was subject to restrictive covenants of any sort, including non-competition or non-solicitation obligations. He was free to compete upon his departure and, under Connecticut law, free to prepare to compete. See Connors v. Howe Elegant, LLC, 2009 WL 242324 at ** 9-10 (Conn. Super. Jan. 8, 2009) ("[A] corporate officer should be allowed to make preparations for a competing business, prior to his or her resignation or termination, in the absence of a restrictive agreement stating otherwise.... Caselaw from other jurisdictions reflects that courts have found that, in the absence of a restrictive covenant, it is not a breach of fiduciary duty for an employee to prepare to compete with an employer prior to the employee's resignation or termination."). TJT, however, alleges McFadden's activities went over the line, and that McFadden instead competed with TJT before ever leaving. See, e.g., Amended Complaint (ECF No. 54) at ¶¶ 63, 70, 76, 124.

annual fees totaling at least $2.5 million due to the reduction of its assets under management, as well as a corresponding diminution in the value of TJT. (Id. at ¶¶ 78, 79.)

## STANDARD FOR MOTION TO DISMISS

Dismissal is proper under Fed. R. Civ. P. 12(b)(6) where a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Krimstock v. Kelly, 306 F.3d 40, 47 (2d Cir. 2002). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The court generally accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, id., and must "draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), to survive a motion under 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly at 555 (internal citations and marks omitted).

## ARGUMENT

A. **TJT's Claim of Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030, *et seq.*) Fails to State a Claim on Which Relief May be Granted**

The Second Cause of Action in the Amended Complaint purports to state a claim for relief under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"). That statute identifies seven types of conduct on which inability may be based. CFAA, 18 U.S.C. § 1030(a)(1)-(7). While not specifically stated in the Amended Complaint, it appears that TJT seeks relief under 18 U.S.C. § 1030(a)(2)(c), which imposes liability on one who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer."

TJT alleges that its computers are "Protected Computers" under the CFAA, again without specifying which definition it relies upon. (Amended Complaint (ECF No. 54) at ¶ 88.)[2] TJT alleges that McFadden, as part of his effort to divert TJT's clients to VIP, accessed "non-public client information" and sent a copy of TJT's client list to "his personal email address." (Id. at ¶ 89.) TJT asserts that "[i]n so doing, [McFadden] exceeded and misused his authority to access TJT Capital's computers," causing losses "exceeding $5,000." (Id. ¶¶ 90-91.)

These allegations, even if accepted as true, are insufficient to support a CFAA claim. As noted in the Amended Complaint's Factual Allegations, McFadden was authorized to use TJT's computer and to access all of its client information, both as a Member and as TJT's Chief Compliance Officer responsible for TJT's password-protected procedures, policies and the

---

[2] TJT presumably bases this claim on 18 U.S.C §1030(e)(2)(B), which defines a "protected computer" as one "used in or affecting interstate commerce or communication." See Amended Complaint (ECF No. 54) at ¶ 87 ("TJT Capital uses its computers in interstate commerce.").

5

information protected thereunder. (Amended Complaint (ECF No. 54) at ¶¶ 34-37, 40, 42.) Indeed, TJT admits McFadden had full "authority to access [TJT's] non-public, password protected, confidential client information that was stored on its computer system...." (Id. at ¶¶ 35, 37, 40.) TJT concludes that this authority was "exceeded and misused" when he retained a client list for "his own personal -- and VIP and Hodges' -- use and benefit." (Id. ¶ 40.).

The CFAA is a statutory scheme "aimed at preventing the typical consequences of hacking." Van Buren v. United States, 593 U.S. 374, 392 (2021) (internal quotation marks and citation omitted). The CFAA imposes civil liability on any individual who "intentionally accesses a protected computer without authorization" or "exceeds authorized access" and thereafter carries out a prohibited action set forth in the statute. See 18 U.S.C. §§ 1030(a)(1)-(7); 1030(g). In Van Buren, the Supreme Court accepted the defendant's interpretation of the clause "without authorization"; that is, the language "without authorization" serves to "protect[] computers themselves by targeting so-called outside hackers—those who 'acces[s] a computer without any permission at all.'" Id. at 389 (quoting LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1133 (9th Cir. 2009)); see LVRC Holdings, 581 F.3d at 1133 (emailing documents to a personal address from a company computer employee had permission to use does not constitute accessing the computer "without authority").

In United Rentals v. Wilper, 626 F.Supp.3d 546 (D. Conn. 2022), Judge Bryant dismissed a CFAA claim based on the allegation that the defendant accessed the plaintiff's computer system "without authorization." Wilper involved allegations that a former employee intentionally deleted data held on her company-issued cell phone. Id. at 549. The court noted that the CFAA's "without authorization" provision "applies to outside hackers, meaning someone who has no rights to access the computer in question." Id. at 551. Judge Bryant

dismissed the claim because, as in this case, the plaintiff's complaint lacked any allegation of hacking: "Here, there is no dispute that Defendant had permission to use the phone United provided her. Thus, she was not an individual accessing the phone "without authorization" in violation of the CFAA ...." Id. at 552. As McFadden at all times had permission to access TJT's computer systems, TJT cannot state a claim based on a lack of authorization.

TJT's CFAA claim fares no better to the extent that it's interpreted to assert that McFadden exceeded authorized access to TJT's computer systems. As noted above, TJT does not dispute that McFadden had permission to use TJT's computer; TJT alleges only that McFadden "exceeded" that authority. McFadden could have "exceeded" his "authorized" access only by accessing areas of TJT's computer systems to which he was not allowed to access. The Supreme Court explained this requirement in Van Buren, which involved a police officer who used his authorized access to a police database to obtain license plate information for non-police use, thus obtaining and transmitting information for personal use without permission. The government argued the officer's conduct exceeded "authorized access." The Supreme Court disagreed, holding that to "exceed authorized access" under the CFAA, one must be guilty of "entering a part of the system to which a computer user lacks access privileges." Id. at 375. The Court noted it is a "gates-up-or-down" definition that controls liability under the CFAA -- one either has or does not have permission to use the computer (i.e., "authorized access"), or has or does not have permission to access certain areas within the computer system (i.e., "exceeds authorized access"). Id. at 376-77. The Court held as follows: "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer--such as files, folders, or databases--that are off limits to him." Id. at 396. This limitation applies even if permitted authorized access is alleged to have

7

been undertaken wrongfully: individuals do not exceed authorized access when they "have improper motives for obtaining information that is otherwise available to them." Id. at 378.

In Negative, Inc. v. McNamara, 2025 WL 814755 (E.D.N.Y. March 13, 2025), appeal filed (2d Cir. April 14, 2025), the court dismissed a CFAA claim based on the defendant's downloading of information contained on the plaintiff's computer system, including the exporting and downloading of the plaintiff's "customer database." Id. at * 1. Relying on Van Buren, the court dismissed the CFAA claim because the complaint did not allege facts supporting the allegation that the defendant "exceeded authorized access" to the plaintiff's systems. The court noted the lack of "any allegation that McNamara was not permitted to access the information ... that she allegedly downloaded – i.e., that these "areas" within Negative's systems were off limits to her." Id. at * 4.

As this authority shows, to state a claim under the CFAA for exceeding authority, one must allege that a person who had authorization (i.e., one who was not an outside "hacker") used a Protected Computer in a fashion that "exceeds authorized access," defined in the CFAA to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." (CFAA, 18 U.S.C. § 1030(e)(6)).

TJT has not alleged a specific provision of the CFAA McFadden allegedly violated, nor has it alleged any specific facts demonstrating unauthorized access of a protected computer. In this case, TJT uses the "exceeds authorized access" under the CFAA only in a colloquial fashion, an approach analyzed and flatly rejected by the Supreme Court. As McFadden had permission to access the entire computer system of TJT, the CFAA claim premised upon his personal use of information he accessed with such permission must fail.

## B. TJT'S Claim of Common Law Trade Secret Misappropriation Fails to State a Claim on Which Relief May be Granted

In its Fourth Cause of Action, TJT asserts a claim under the Connecticut Unfair Trade Secrets Act, Conn. Gen. Stat. § 35-55, *et seq.* ("CUTSA"). TJT also asserts as its Fifth Cause of Action a claim of "common law misappropriation of trade secrets." No such claim exists under Connecticut law.

Conn. Gen. Stat. § 35-57, a CUTSA provision entitled "Provisions of chapter supersede conflicting law re civil liability. Limitation," states, "Unless otherwise agreed by the parties, [CUTSA] supersede[s] any conflicting tort, restitutionary, or other law of this state pertaining to civil liability for misappropriation of a trade secret." Conn. Gen. Stat. § 35-57(a). This CUTSA provision preempts "a common law or statutory claim predicated on a breach of 'duties imposed by law in order to protect competitive secret trade information.'" Roller Bearing Co. of America v. Multicut North America, Inc., 2023 WL 7277244 at *23 (D. Conn. Sept. 29, 2023) (quoting On-Line Techs., Inc. v. Perkin-Elmer Corp. 253 F.Supp.2d 313, 334 (D.Conn. 2003); see also Nora Beverages, Inc. v. Perrier Grp. of America, Inc., 164 F.3d 736, 751 (2d Cir. 1998) (alternative tort claim premised upon misuse of trade secrets properly held preempted by CUTSA).

In Dur-A-Flex, Inc. v. Dy, 349 Conn. 513, 602-03 (2024), the Connecticut Supreme Court recently rejected common law claims premised on post-employment, wrongful use of confidential information absent either a contractual restriction or an allegation of a CUTSA violation. The court stated: "CUTSA preempts noncontractual civil claims against a former employee based on the acquisition, disclosure, or use of confidential information that does not rise to the level of a trade secret. A noncontractual claim based on the misappropriation of

9

commercial information by a former employee must be brought under CUTSA or not at all." Id. at 603.

The Fifth Cause of Action alleges a "noncontractual claim based on the misappropriation of commercial information by a former" member of TJT. Such a claim may be brought solely under CUTSA. As TJT's common law trade secret misappropriation count is clearly preempted and not cognizable under Connecticut law, the claim should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant Timothy McFadden submits that the Second and Fifth Causes of Action asserted in TJT's Amended Complaint fail to state claims upon which relief may be granted in Plaintiff's favor and against McFadden. Pursuant to Fed.R.Civ.P. 12(b)(6), McFadden respectfully requests that the Court dismiss both of those claims, with prejudice and with McFadden's costs awarded.

**DEFENDANT**
**TIMOTHY MCFADDEN**

By/s/ Douglas J. Varga
    Scott R. Lucas, Esq. (ct00517)
    Douglas J. Varga, Esq. (ct18885)
    Lucas & Varga LLC
    2425 Post Road, Suite 200
    Southport, CT 06890
    Phone: (203) 227-8400
    Fax: (203) 227-8402
    slucas@lucasvargalaw.com
    dvarga@lucasvargalaw.com

*His Attorneys*

## CERTIFICATION

I hereby certify that on April 21, 2025, the foregoing Memorandum of Law in Support of Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                      /s/ Douglas J. Varga
                                                                    Douglas J. Varga (ct18885)